J-A11018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| HAUSER HOLDINGS, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| THE FORCE CORPORATION | |
| Appellant | No. 1696 MDA 2016 |

Appeal from the Order Entered September 19, 2016
In the Court of Common Pleas of Columbia County
Civil Division at No(s): 471-CV-2013

BEFORE:  SHOGAN, J., MOULTON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MOULTON, J.:                **FILED OCTOBER 18, 2017**

The Force Corporation ("Force") appeals from the September 19, 2016 order entered in the Court of Common Pleas of the 26th Judicial District (Columbia County Branch) granting summary judgment in favor of Hauser Holdings, LLC ("Hauser") and denying Force's cross-motion for summary judgment.  We affirm.

The relevant factual and procedural history of this matter is as follows. On October 17, 1994, Force granted a mortgage to Thomas X. Flaherty on property located at 501 East Street, Bloomsburg, Columbia County, to secure a debt of $96,500.00.  **See** Amend. Compl., Ex. B.  Sharon K. Babb signed the mortgage contract in her capacity as president and secretary of

_____

[*] Former Justice specially assigned to the Superior Court.

Force, a Pennsylvania corporation. Also on October 17, 1994, Babb and Flaherty entered an "Agreement" wherein Babb personally agreed to pay Flaherty $96,500.00, plus 10% interest per annum, by August 1999 in exchange for all of Flaherty's shares[1] in Force and another Pennsylvania corporation, Bar-B Corporation.[2]  *See* Amend. Compl., Ex. A.

On October 19, 1999, Babb and Flaherty signed an "Extension Agreement" and Babb signed a "Mortgage-Promissory Note," wherein Babb agreed to pay Flaherty $152,158.22, plus 10% interest per annum, by September 15, 2000.  *See* First Amend. Compl., Exh. E.  Babb and Flaherty also signed a "Loan Agreement," dated October 19, 1999, confirming the loan.  On October 22, 1999, Flaherty signed a "Subordination Agreement," subordinating his October 1994 mortgage to one held by Equity One, Inc. *See* First Amend. Compl., Exh. A.

On December 1, 2011, Flaherty assigned all of his rights, title, and interests in the above to Mountain View Financial, LLC ("Mountain View"). *See* First Amend. Compl., Exh. G.  On April 22, 2013, Mountain View initiated this action by filing a complaint in mortgage foreclosure against

---

[1] While the Agreement states that Flaherty owned 50% of the shares of each of the corporations, Babb maintains that she has been the sole owner of both corporations since their inception.  *See* Force's Br. at 7-8; Flaherty Aff., Ex. B, at 14.

[2] As the trial court notes, the certified record contains only the first three pages of the Agreement, without a signature page.

Force and Babb. On May 13, 2013, Force and Babb filed preliminary objections, which the trial court sustained in part and denied in part on July 9, 2013.

On July 29, 2013, Mountain View filed an amended complaint, removing Babb as an individual defendant, and alleging that Force had not paid the full amounts due under the loan. Mountain View alleged the outstanding balance due totaled $376,147.96, including: (1) $156,158.22 in principal; (2) $214,989.75 in interest from October 19, 1999 to July 26, 2013; and (3) $5,000.00 in counsel fees. Thereafter, on October 10, 2013, Mountain View assigned its rights, title, and interests to VAI Inc. **See** Flaherty Aff., Exh. E. On April 17, 2015, VAI Inc. assigned the same to Hauser. **See** Flaherty Aff., Exh. F. On July 17, 2015, Hauser filed a substitution of successor in this matter.

On June 8, 2016, Hauser filed a motion for summary judgment, and on July 1, 2016, Force filed a cross-motion for summary judgment. On September 19, 2016, the trial court granted Hauser's motion, denied Force's cross-motion, and entered judgment in favor of Hauser for $193,000.00[3] plus $5,000.00 in counsel fees. On September 30, 2016, Hauser filed a praecipe to enter judgment. On October 11, 2016, Force timely filed a notice of appeal.

_____

[3] The trial court entered judgment "only to the maximum lien of $193,000.00 authorized by the mortgage." Trial Ct. Op., 9/19/16, at 7.

Force raises the following issues on appeal:

> I. Did the court err in granting [Hauser]'s motion for summary judgment as to whether or not [Hauser] is a real party in interest as there exist defects in the assignment of the chose [sic] in action by Thomas Flaherty?
>
> II. Did the court err in granting [Hauser]'s motion for summary judgment as there has been shown to be no consideration received by [Force], for its alleged mortgage obligation?
>
> III. Did the court err in failing to grant [Hauser]'s motion for summary judgment by failing to find that the extinguishment of underlying bond or note also extinguishes the mortgage?
>
> IV. Did the court err in failing to determine that enforcement of the mortgage is time barred by the statute of limitations?

Force's Br. at 4-5 (suggested answers and full capitalization omitted).

It is well-established that "summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Truax v. Roulhac*, 126 A.3d 991, 996 (Pa.Super.) (quoting *Atcovitz v. Gulph Mills Tennis Club, Inc.,* 812 A.2d 1218, 1221 (Pa. 2002)), *app. denied*, 129 A.3d 1244 (Pa. 2015). The moving party bears the burden of proving that no genuine issue of material fact exists. *Stimmler v. Chestnut Hill Hosp.*, 981 A.2d 145, 159 (Pa. 2009). "[T]he trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of

material fact against the moving party . . . ." **Truax**, 126 A.3d at 996 (internal citation omitted).

We have explained our standard of review as follows:

> [A]n appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo.* This means we need not defer to the determinations made by the lower tribunals.

**Id.** (quoting **Weaver v. Lancaster Newspapers, Inc.,** 926 A.2d 899, 902–03 (Pa. 2007)).

For ease of analysis, we begin with Force's third and fourth issues, which implicate the appropriate statutes of limitations for the instant action. First, Force alleges that because the statute of limitations has run for commencement of an action upon the note accompanying the mortgage, the note has been "effectively extinguished," Force's Br. at 23, and thus, an action on the mortgage itself also is time-barred. We conclude that Hauser's ability to foreclose on the property is not affected by the statute of limitations for commencement of an action on the note, regardless of whether the note is subject to a four- or twenty-year statute of limitations.

This Court has concluded that the right of action on a mortgage survives the extinction of a right of action upon the accompanying note, and the right of action on the mortgage continues until the underlying debt is

paid or extinguished. *See Brackenridge v. Cummings*, 18 Pa.Super. 64, 68 (1901).[4] Accordingly, Force's third issue does not merit relief.

Force next claims that enforcement of the mortgage itself is barred by the statute of limitations. Under section 5529(b) of the Judicial Code, "an action upon an instrument in writing under seal must be commenced within

---

[4] In support of its argument, Force relies in part on *In re Estate of Snyder*, 13 A.3d 509 (Pa.Super. 2011), in which we held that an appellant could not collect on the debt on two mortgage liens because his action was filed after the expiration of the statute of limitations for the underlying instruments secured by those liens. *Snyder*, 13 A.3d at 514. We noted that "[t]he payment of either a mortgage or [an underlying] bond discharges both, 'and a release or extinguishment of either, without actual payment, is a discharge of the other, unless otherwise intended by the parties.'" *Id.* (quoting *Morgan Guar. Trust Co. of New York v. Mowl*, 705 A.2d 923, 929 (Pa.Super. 1998)) (alterations in original). In *Mowl*, the mortgagee was unable to recover under the bond underlying the mortgage because the mortgagors had satisfied the judgment entered against them following an action in mortgage foreclosure, by paying the sheriff the judgment amount plus costs. 705 A.2d at 925, 929. "[T]he trial court [had] made an explicit ruling that [the] judgment in the mortgage foreclosure action was satisfied when [the mortgagors] tendered the face amount on the writ of execution to the sheriff." *Id.* at 928.

We conclude that *Snyder* is distinguishable because, there, the appellant did not file an action in mortgage foreclosure. Rather, he sought to **collect on the debt** on the mortgage liens, and the record contained no indication "the parties intended the mortgage liens to be considered separate from the underlying debts." *Id.* Here, in contrast, Hauser filed an action in mortgage foreclosure, which "is strictly an *in rem* action and may not include an *in personam* action to enforce personal liability." *Insilco Corp. v. Rayburn*, 543 A.2d 120, 123 (Pa.Super. 1988). Thus, because "[t]he sole purpose of a judgment obtained through mortgage foreclosure is to effect a judicial sale of the mortgaged real estate, *. . .* the judgment obtained in a mortgage foreclosure action is only *in rem*." *Id.* Hauser's right to foreclose on the house *in rem* survives irrespective of its ability to proceed *in personam* against Force, so long as the underlying debt remains unpaid.

20 years." 42 Pa.C.S. § 5529(b). Because the October 17, 1994 mortgage "defines the rights, duties, entitlements, and liabilities of the parties involved," it is an "instrument" pursuant to section 5529. *In re Estate of Snyder*, 13 A.3d 509, 513 (Pa.Super. 2011). Nevertheless, Force argues that section 5529(b)'s 20-year limitation period does not apply because the mortgage was not filed "under seal."

"'[T]his [C]ourt has held, in accord with many cases written by our Supreme Court, that when a party signs [an instrument] which contains a pre-printed word 'SEAL,' that party has presumptively signed [an instrument] under seal.'" *Snyder*, 13 A.3d at 513 (quoting *Beneficial Consumer Discount v. Dailey*, 644 A.2d 789, 790 (Pa.Super. 1994)). Babb signed the 1994 mortgage next to the pre-printed word "SEAL" in parentheses. *See* Amend. Compl., Ex. B. The 1994 mortgage is therefore an instrument in writing under seal, and the statute of limitations for an action on the mortgage is 20 years. The instant action was filed in 2013 and thus falls within the statute of limitations.

In sum, we conclude that Force's third and fourth issues are without merit. Under either theory, there is no genuine issue of material fact as to whether Hauser is barred from recovery due to the statute of limitations.

Because we have concluded that Hauser's right of action on the mortgage is not time-barred, we turn to Force's claim that there was no consideration for the mortgage obligation.

Pennsylvania's Uniform Written Obligations Act ("UWOA") "applies to notes and mortgages, just as it does to other contract documents." **Nicholas v. Hofmann**, 158 A.3d 675, 690 (Pa.Super. 2017). This Court has previously explained:

> Section 1 of the UWOA, 33 P.S. § 6, reads in its entirety:
>
> > A written release or promise, hereafter made and signed by the person releasing or promising, shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound.
>
> Under this provision, if an agreement is accompanied by an intentional, binding statement, it does not require further consideration:
>
> > Our caselaw has explained that, generally, this section provides that a written agreement will not be deemed to be void for lack of consideration if it contains an express statement that the signer intends to be legally bound, **Yocca v. Pittsburgh Steelers Sports, Inc.**, 578 Pa. 479, 854 A.2d 425, 433 (2004), and, more explicitly, has interpreted this provision to supply the necessary consideration for an agreement. See **Morgan's** [**Home Equip. Corp. v. Martucci**], 390 Pa. 618, 136 A.2d [838,] at n. 12 [ (1957) ] (parties' express intention to be legally bound within meaning of UWOA has the same effect in importing consideration as a seal on the agreement). . . . [A]ny party challenging the validity of a contract containing an express intent to be legally bound will not be entitled to relief from the agreement on the basis that the promises made therein lack consideration.

***Nicholas***, 158 A.3d at 689–90. Here, the mortgage document notes that the mortgagor "stand[s] firmly bound unto the . . . mortgagee." This language satisfies 33 P.S. § 6. Thus, because Force is not entitled to relief, there is no genuine issue of material fact whether there was adequate consideration for the mortgage obligation.

Finally, Force challenges Hauser's status as a real party in interest pursuant to Pennsylvania Rule of Civil Procedure 2002(a), which requires that actions "be prosecuted by and in the name of the real party in interest." Pa.R.C.P. 2002(a). Force argues that there was a defect in the first assignment between Flaherty and Mountain View. However, we conclude that Force lacks standing to challenge the validity of the assignment. This Court has previously stated:

> The court [in ***In re Walker***, 466 B.R. 271, 285 (Bankr.E.D.Pa. 2012), found] that the debtor lacked standing to question the validity of the assignment(s) of the note:
>
> > [The threshold inquiry in analyzing a party's standing is to evaluate whether the party can demonstrate that the party has suffered or will suffer "injury in fact."] If a borrower cannot demonstrate potential injury from the enforcement of the note and mortgage by a party acting under a defective assignment, the borrower lacks standing to raise the issue.

***JP Morgan Chase Bank, N.A. v. Murray***, 63 A.3d 1258, 1264–65 (Pa.Super. 2013) (quoting ***Walker***, 466 B.R. at 285) (alterations added). Furthermore,

a note secured by a mortgage is a negotiable instrument, as that term is defined by the [Pennsylvania Uniform Commercial Code], and . . . "[p]ursuant to the PUCC, a debtor who satisfies his obligations under a negotiable instrument cannot be required to do so again, even if the recipient of the debtor's performance is not the holder of the note in question."

***Gerber v. Piergrossi***, 142 A.3d 854, 862 (Pa.Super. 2016) (quoting ***Murray***, 63 A.3d at 1263), *app. denied*, 142 A.3d 854 (Pa. 2017). Accordingly, "a borrower is not in peril of double liability or injury by an allegedly defective assignment, for if the assignment to the foreclosing party had been defective, the borrower would not have to pay on the note to another party." ***Id.*** Because Force has not demonstrated potential injury from the enforcement of its obligations under the mortgage even if the assignment was defective, Force lacks standing to challenge the validity of the assignment.

Accordingly, we conclude that the trial court properly granted summary judgment in Hauser's favor.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/2017

- 10 -