J-S11031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PENNYMAC CORPORATION | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GWENDOLYN L. JACKSON, PATRICIA | : | |
| GRAY AND THE UNITED STATES OF | : | |
| AMERICA | : | |
| | : | |
| | : | |
| APPEAL OF: PATRICIA GRAY | : | No. 2472 EDA 2017 |

Appeal from the Order Dated July 14, 2017
in the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  May Term, 2015 No. 00706

BEFORE:  OTT, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:　　　　　　　　　**FILED JUNE 15, 2018**

Patricia Gray ("Gray"), *pro se*, appeals from the Order denying her post-trial Motion, and entering judgment in favor of PennyMac Corporation ("PennyMac"), and against Gray and her sister, Gwendolyn L. Jackson ("Jackson") (collectively, "Defendants"),[1] in a mortgage foreclosure action with respect to property located at 2276-78 North 51st Street, Philadelphia, Pennsylvania ("the Property").  We affirm.

The trial court aptly summarized the relevant portion of the "tortuous history" underlying this appeal as follows:

> On January 30, 1981, [] Gray and Jackson entered into a 30-year mortgage for [the Property] in the amount of $52,000.00 with the Philadelphia Savings Fund Society (the "Mortgage").  [] Gray and

---

[1] Neither Jackson nor the United States of America is a party to the instant appeal.

Jackson also executed a note (the "Note") in the principal amount. On February 3, 1981, the Mortgage was recorded with the Office of the Recorder of Deeds of Philadelphia County at book 134, page 321. After a series of endorsements and assignments of the Note and Mortgage[,] [] PennyMac [] became the mortgagee of Defendant[s'] Mortgage and holder of the Note.

Defendants defaulted on the mortgage as a result of non-payment on May 1, 1996. No payments have been made since this time. Subsequently[,] there have been several efforts at foreclosure by [PennyMac's] predecessors-in-interest that have not met with success. In September[] 1996, a suit (the "1996 Action") by prior mortgagee Mellon Bank was commenced. [O]n September[] 20, 2002, the [c]ourt issued an [O]rder which included a stipulation between [] Jackson and Mellon [Bank] that [] Jackson's Answer and New Matter was stricken[,] and that summary judgment would be entered "against [] Jackson and in favor of [Mellon] upon [Mellon's] filing the same." **This [O]rder did not extinguish the remaining claims against [] Gray.** [] Gray also made a cross-claim against her co-defendant Jackson. The matter proceeded to a trial on January 30, 2006. [] Gray successfully argued that the required Act 91 Notice of Intent to Foreclose was not issued prior to the filing of the Complaint. On January 31, 2006, following the trial, the Honorable Myrna Fields signed a Trial Work Sheet stating: "Finding for [] Gray on the Complaint" and "no finding on counterclaim as irrelevant at this time." A Praecipe to Discontinue the 1996 Action without prejudice was filed by Mellon[ Bank's] successor[-]in[-]interest to the [M]ortgage, Credit Based Asset Servicing and Securitization LLC ("Credit Based"), on November 2, 2007. A [M]otion to [S]trike the [P]raecipe[,] filed by [] Gray[,] was denied on June 4, 2008, with the [c]ourt holding that Credit Based could bring a new foreclosure action[,] but that any *in personam* action against Gray was barred. [] Gray appealed[,] and on September 9, 2010, the Superior Court reversed, holding that the discontinuance of the action after the trial (which took place in January 2006) was procedurally improper and prejudiced Gray's ability to assert her remaining claims against the lender and cross-claims against her sister. [**See Mellon Bank v. Jackson**, 13 A.3d 975 (Pa. Super. 2010) (unpublished memorandum).] The [Superior] Court did not hold that [the M]ortgage was extinguished. On May 11, 2011, after remand, judgment was entered in Gray's favor in the Court of Common Pleas.

[On April 25, 2011, Gray filed for bankruptcy, and the bankruptcy court confirmed Gray's Chapter 13 Plan on April 18, 2012.] On May 5, 2015, [PennyMac,] after having received relief from the automatic stay in Defendant[s'] bankruptcy proceedings, filed its [C]omplaint in this matter.[2] At trial, [PennyMac] proved ownership of the Note and Mortgage[,] and the balance due. [Gray] herself admitted to making no payments since 1996. [Following a non-jury trial, t]he [trial c]ourt found in favor of [PennyMac] and against Defendants … in mortgage foreclosure in the amount of $151,419.51. The [trial c]ourt calculated this amount not from 1996, as urged by [PennyMac], but from 2006, a period [] beginning with the conclusion of [PennyMac's] predecessor's previous unsuccessful attempt to foreclose.

Trial Court Opinion, 12/4/17, at 2-3 (footnote omitted; emphasis and footnote added).

On April 29, 2017, Gray filed a Post-Trial Motion. On May 19, 2017, before the trial court had decided Gray's Post-Trial Motion or entered judgment, Gray filed a Notice of Appeal, purportedly from the April 26, 2017 Trial Work Sheet, which indicated that the trial court found in favor of PennyMac. The trial court directed Gray to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal, and Gray complied.

_____

[2] Gray filed Preliminary Objections on December 15, 2015, and an Answer and New Matter on April 15, 2016. PennyMac filed a Reply. On July 15, 2016, Gray filed a Motion for Summary Judgment, to which PennyMac filed a Response in opposition to Gray's Motion, as well as a Cross-Motion for Summary Judgment. Gray filed a Response. On September 20, 2016, the trial court denied Gray's Motion for Summary Judgment. PennyMac subsequently filed a Motion for Summary Judgment on September 29, 2016. Gray filed a Response. On November 28, 2016, the trial court denied PennyMac's Motion for Summary Judgment. Gray also filed a Motion for Judgment on the Pleadings on November 25, 2016, which the trial court denied.

By an Order dated July 14, 2017,[3] the trial court denied Gray's Post-Trial Motion, and entered judgment in favor of PennyMac, and against Defendants, in the amount of $151,419.51. Gray filed a timely Notice of Appeal and a court-ordered Rule 1925(b) Concise Statement.[4]

On appeal, Gray raises the following claims for our review:

1. Did [PennyMac] have standing to bring the instant mortgage foreclosure action?

2. Did the trial court err in not recognizing that [PennyMac's] [C]omplaint was barred as an unsealed instrument by the statute of limitations?

3. Did the trial court err in not barring [PennyMac's] claim based on the doctrine of waiver and/or doctrine of *res judicata* and/or collateral estoppel?

4. Are [PennyMac's] claims barred pursuant to the doctrine of merger of judgments?

5. Did the trial court err in permitting [PennyMac] to change its claim and default period during the trial?

6. Did the trial court err in not recognizing that [PennyMac's] [C]omplaint was barred by the doctrine of equitable estoppel?

7. Did the trial court err in not finding against [PennyMac] for failure to mitigate damages?

Brief for Appellant at 6 (issues renumbered; some capitalization omitted).

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact

---

[3] The Order was docketed on July 17, 2017.

[4] Gray's first appeal was discontinued on November 7, 2017.

of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary. The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Bank of New York Mellon v. Bach*, 159 A.3d 16, 19 (Pa. Super. 2017) (citation and paragraph break omitted).

Gray first challenges PennyMac's standing to bring the foreclosure action. *See* Brief for Appellant at 61-66. Gray contends that because judgment was entered only against Jackson in the 1996 Action, PennyMac lacks standing to bring a mortgage foreclosure action against her. *Id.* at 61-62. Gray asserts that PennyMac should enforce the judgment only against Jackson. *Id.* at 66.

"The holder of a mortgage has the right, upon default, to bring a foreclosure action." *Bank of America, N.A. v. Gibson*, 102 A.3d 462, 464 (Pa. Super. 2014). In a foreclosure action, the plaintiff can prove standing either by showing that it (1) originated or was assigned the mortgage, or (2) is the holder of the note specially indorsed to it or indorsed in blank. *J.P. Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1267-68, n.6 (Pa. Super. 2013); *see also CitiMortgage, Inc. v. Barbezat*, 131 A.3d 65, 69 (Pa. Super. 2016) (stating that "[w]here an assignment is effective, the assignee stands in the shoes of the assignor and assumes all of his rights.").

Gray does not challenge PennyMac's status as either the assignee of the Mortgage or the holder of the Note.[5]  ***See Murray, supra***.  Moreover, our review of the record confirms that PennyMac had standing to bring the instant mortgage foreclosure action against Gray, as the assignee of the Mortgage. ***See*** Trial Court Opinion, 12/4/17, at 5.  Here, PennyMac alleged in its Complaint that "Jackson and [] Gray made, executed and delivered a [M]ortgage upon [the Property] to The Philadelphia Savings Fund Society[,]" and that the Mortgage was ultimately assigned to PennyMac on August 10, 2012.  Complaint, 5/7/15, ¶ 3.[6]  In her Answer and New Matter, Gray admitted that she executed the Mortgage.  ***See*** Answer and New Matter, 1/10/16, ¶ 3; ***see also id.*** (wherein Gray denied the remaining allegation set forth in ¶ 3 of PennyMac's Complaint, but stated that "the alleged documents speak for themselves.").  Additionally, the certified record contains a copy of the Mortgage, as well as each subsequent assignment of the Mortgage.  ***See*** Motion for Summary Judgment, 9/29/16, Exhibits A, B (assignment from Philadelphia Saving Fund Society to Mellon Bank, N.A., executed on April 7, 1994, and recorded on May 19, 1994), C (assignment from Mellon Bank to

---

[5] In fact, throughout her brief, Gray refers to PennyMac as an assignee, and confirms that PennyMac stands in the shoes of its predecessors. ***See*** Brief for Appellant at 33, 36, 41-42, 46, 50, 56, 58-60, 62-63.

[6] PennyMac did not attach a copy of the Mortgage or Note to its Complaint. However, "a complaint in mortgage foreclosure does not need to include the original promissory note[,]" ***Bank of New York Mellon v. Johnson***, 121 A.3d 1056, 1063 (Pa. Super. 2015) (citation and quotation marks omitted), and the Complaint is compliant with Pa.R.A.P. 1147.

Credit Based, executed on August 23, 2004, and recorded on October 1, 2004), D (assignment from Credit Based to Citigroup Global Markets Realty Corp. ("Citigroup"), executed on December 21, 2007, and recorded on February 12, 2008), E (assignment from Citigroup to Liquidation Properties, Inc., executed on November 25, 2009, and recorded on December 9, 2009), and F (assignment from Citi Property Holdings, Inc., f/k/a Liquidation Properties, Inc., to PennyMac Corp., executed on July 30, 2012, and recorded on August 30, 2012). Gray has not challenged the validity of any of these assignments. The evidence of record establishes that PennyMac holds the Mortgage by way of assignment, *see Murray, supra*, and therefore, Gray's first claim is without merit.

In her second claim, Gray argues that PennyMac's Complaint was barred by the statute of limitations. Brief for Appellant at 15. Gray claims that "if the statute of limitations has expired on the Note[,] the Mortgage is unenforceable." *Id.* at 17. Gray also contends that both the Mortgage and the Note are unsealed instruments because the word "seal" does not appear on the signature line on either document. *Id.* at 16, 22. Gray asserts that, because the Mortgage and Note are unsealed instruments, a four-year statute of limitations applies to the instant action pursuant to 42 Pa.C.S.A.

§ 5525(a)(7). Brief for Appellant at 23-24.

In its Opinion, the trial court stated that "Pennsylvania law contains no express, statutorily mandated statute of limitations pertaining to an *in rem* foreclosure action." Trial Court Opinion, 12/4/17, at 4. The trial court also noted "the common law presumption that a mortgage unclaimed and unrecognized for 20 years has been paid[,]" and determined that PennyMac timely filed its Complaint within 20 years of May 1, 1996, the date of default. *Id.* (citing **Corn v. Wilson**, 75 A.2d 530, 532 (Pa. 1950)); **see also In re Estate of Snyder**, 13 A.3d 509, 514 n.4 (Pa. Super. 2011) (recognizing the common law presumption). Gray failed to establish that the trial court's determination was erroneous, and therefore, she is not entitled to relief on her claim. **See The York Group, Inc. v. Yorktowne Caskets, Inc.**, 924 A.2d 1234, 1246 (Pa. Super. 2007) (stating that "the appealing party bears the burden of establishing that the trial court's decision is erroneous.").

We will address Gray's third and fourth claims together. In her third claim, Gray contends that PennyMac's claims are waived based on the doctrines of *res judicata*, collateral estoppel, and waiver. **See** Brief for Appellant at 31-50. In her fourth claim, Gray argues that PennyMac's claims are barred by the doctrine of merger of judgments. **See** Brief for Appellant at 66-69. Although Gray identifies four separate doctrines which she believes entitle her to relief, she raises the same argument in support of each of those assertions, *i.e.*, that PennyMac is prohibited from bringing the instant

mortgage foreclosure action against her as a result of the judgment entered in the 1996 Action. Brief for Appellant at 33, 35-36, 43, 45-46, 47.

The trial court addressed Gray's claims as follows:

The unsuccessful foreclosure attempts brought by PennyMac's predecessors did not bar the instant action…. [Gray] successfully defended against the 1996 [A]ction solely on the basis of the failure of [PennyMac's] predecessor to send the required Act 91 notice. As a consequence, the [c]ourt found in favor of [Gray] on the complaint in mortgage foreclosure. This action did not extinguish [Gray's] obligations under the Mortgage nor bar [PennyMac] from bringing a second action as a consequence of [Gray's] continuing default under the Mortgage. The prior judgment has no preclusive effect in the instant action….

Trial Court Opinion, 12/4/17, at 4-5; *see also id.* at 5 (stating that "[Gray] has taken the position that the 2002 stipulation for the entry of summary judgment against her co-defendant barred future claims brought against her by [PennyMac]. This stipulation did not bar [PennyMac's] proceeding on this new foreclosure action against [] Gray."). Upon review, we agree with the trial court's determination. Thus, Gray's third and fourth claims do not entitle her to relief.

In her fifth claim, Gray asserts that the trial court erred by allowing PennyMac to "amend[] averment six of the original [C]omplaint," as well as the date of default, during trial. Brief for Appellant at 50-55. Gray states that although the Complaint alleged that a total of $207,724.79 was due on the Mortgage, the total was changed to $151,419.51 during trial. *Id.* at 50-51. Additionally, Gray claims that the date of default was changed from April 1,

1996, to February 1, 2006, but that she did not receive notice regarding a February 2006 default pursuant to Act 6 and Act 91. *Id.* at 51.

Contrary to Gray's assertion, PennyMac did not amend its Complaint during trial. Instead, the trial court determined PennyMac would not be able to claim the interest and fees that accrued on the loan during the 11 years between the initial default in 1996, and January 31, 2006, when the trial court filed a Trial Work Sheet indicating a finding for Gray in the 1996 Action. *See* N.T., 4/25/17, at 11; *see also* N.T., 4/25/17, at 39-43 (wherein the trial court indicated that the principal balance would remain unchanged, as no payments had been made, but that the applicable interest would need to be recalculated from January 2006). Additionally, as the trial court pointed out in its Opinion, Gray benefitted from the trial court's determination, "which significantly reduced the amount of the judgment." Trial Court Opinion, 12/4/17, at 5. Because Gray failed to establish trial court error in this regard, and we discern none, Gray is not entitled to relief on this claim. *See The York Group*, 924 A.2d at 1246.

In her sixth claim, Gray avers that PennyMac's Complaint was barred by the doctrine of equitable estoppel. *See* Brief for Appellant at 57-61. Gray claims that "PennyMac is estopped from claiming that summary judgment was not previously entered against [] Jackson …." *Id.* at 58; *see also id.* at 59. Gray argues that she relied on statements made by PennyMac, or one of its predecessors-in-interest, that the previous judgment against Jackson was a

"done deal," and "no further payments were due on the [M]ortgage." *Id.* at 60.

The doctrine of equitable estoppel requires proof that "a party by acts or representation intentionally or through culpable negligence, induce[d] another to believe that certain facts exist[ed] and the other justifiably relie[d] and act[ed] upon such belief, so that the latter will be prejudiced if the former is permitted to deny the existence of such facts." *Guerra v. Redevelopment Auth. of City of Philadelphia*, 27 A.3d 1284, 1290 (Pa. Super. 2011) (citation omitted).

Initially, contrary to Gray's assertion, PennyMac has not denied that summary judgment was previously entered against Jackson. The trial court also determined that Gray "did not reasonably rely on any representations of [PennyMac] that any prior judgment extinguished her obligations under the [M]ortgage." Trial Court Opinion, 12/4/17, at 5. Further, Gray has not identified any specific misrepresentations upon which she relied, and our review of the certified record reveals nothing to support Gray's claim that anyone from PennyMac told her that no further payments would be due on the Mortgage following the entry of summary judgment against Jackson. Accordingly, Gray's sixth claim is without merit.

In her seventh claim, Gray argues that PennyMac failed to mitigate its damages. Brief for Appellant at 55. Gray claims that Credit Based, as PennyMac's predecessor-in-interest, "could have taken the summary

judgment it received in the Mellon case against [] Jackson and sold her interest in the Property[,] and if that did not satisfy their debt[,] they could have pursed [*sic*] action seeking a deficiency judgment against [] Jackson." **Id.** at 57.

Notably, Gray does not contend that she ever attempted to cure the default and reinstate the Mortgage by paying the outstanding balance. **See** Mortgage, 1/30/1981, at 3-4 (providing that, notwithstanding acceleration by the lender, Defendants have the right to have any proceedings to enforce the Mortgage discontinued by, *inter alia*, paying all sums due under the Mortgage and Note). In fact, at trial, Gray admitted that she had signed the Note and Mortgage, and that she had "not paid anything" since the close of the prior action. **See** N.T., 4/25/17, at 10-11, 50. Additionally, as the trial court stated, "[PennyMac] was not dilatory in bringing its foreclosure action. The repeated attempts by [PennyMac's] predecessors to foreclose on the [M]ortgage speak for themselves." Trial Court Opinion, 12/4/17, at 5. Thus, Gray failed to establish the affirmative defense of failure to mitigate damages, and she is not entitled to relief on her final claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/15/18</u>